DECISION
Before the Court is a timely appeal from a decision of the Defendant Zoning Board of Review of the Town of Coventry (hereinafter referred to as the Town) acting as the Town's Subdivision Board of Review pursuant to G.L. 1956 (1991 Reenactment) § 45-23-14 and the subdivision regulations of the Town of Coventry (hereinafter referred to as the Board). Jurisdiction in this Superior Court is pursuant to G.L. 1956 (1991 Reenactment) § 45-23-71.
FACTS AND PROCEDURAL HISTORY
A review of the record indicates that Blackrock Associates, L.L.C.[1] (hereinafter referred to as Petitioner) is aggrieved by a decision of the Board dated January 5, 1995, relating to its application for subdivision approval of a certain residential subdivision on Hill Street in the Town of Coventry known as Blackrock Estates (hereinafter referred to as Blackrock). Said decision affirmed an earlier decision of the Town's Planning Board which denied the Petitioner's proposed subdivision.
HEARING OF SEPTEMBER 7, 1994
At the September 7, 1994 hearing, Petitioner explained that the subdivision proposal had been before the Planning Board for several years and received pre-application approval but was denied at the public hearing stage because the proposed subdivision did not have two fully developed means of access;[2] the Blackrock proposal has one fully developed means of access and one less than fully developed means of access. (Tr. pp. 2-3). Petitioner argues that a second fully developed access is: (1) neither appropriate nor necessary for the site in view of the traffic volume, safety consideration and other public planning considerations; (2) impossible because of limited frontage; (3) not likely to be allowed by the Department of Environmental Management (hereinafter referred to as DEM); and (4) inappropriate because it would require that a road pass in close proximity to a condominium building. (Tr. pp. 3-4). Petitioner contends that the Blackrock proposal satisfies the Town's subdivision regulations and presented expert testimony in support thereof.
Petitioner argued that nothing contained in either (i) the Town's subdivision rules and regulations or (ii) the Town's zoning ordinances requires two (2) fully developed means of access to a subdivision or two (2) accesses to a subdivision. (Tr. p. 6). There is, however, a planning commission policy, apart from the subdivision rules and regulations, stating, "Two means of ingress and egress should be required as appropriate or necessary to provide for adequate, safe and free-flowing circulation of pedestrian and vehicular traffic." (Tr. p. 6). Petitioner argues that the Blackrock proposal containing two (2) means of access, one (1) fully developed access and one less than fully developed, is sufficient; the second means of access should not be fully developed because it is neither appropriate nor necessary. (Tr. p. 7).
In support of the above arguments, Petitioner called as a witness Dennis DiPrete (hereinafter referred to as DiPrete), an experienced professional engineer registered in Rhode Island whom the Board accepted as an expert. (Tr. pp. 7-8). DiPrete described the Blackrock frontage on Hill Street as approximately 460 feet, split by a parcel of land containing a condominium building; the resulting frontage then is approximately 160 feet on one side of the condominiums and approximately 300 feet on the other side; wetland areas along the property line require a fifty (50) foot buffer. (Tr. pp. 9-10). In planning a second means of access, A 
R Properties, Inc., the party from which Petitioner became successor-in-interest for the proposed Blackrock development (hereinafter referred to as A R Properties), purchased an additional piece of land. (Tr. p. 10). Said land contains South Pond, a gravel road along the pond and a yellow house; the gravel road passes along the side of the pond then via easement on property owned by the condominium association intersects with Hill Street. (Tr. pp. 10-11). DiPrete testified that a second access, fully developed or not, was unnecessary. (Tr. p. 12). He based this opinion on the following: fifty-four (54) homes do not generate an overburden of traffic; the one fully developed access road would be about twice as wide as the width of Hill Street; a second means of access is not warranted but even if warranted, a second means of access is available. (Tr. pp. 13-15). The second means of access would include an easement from the condominium association; said easement has no recorded width but is approximately 15 feet wide. (Tr. pp. 16-17). DiPrete stated that DEM would probably prevent Petitioner from fully developing the second access because of other wetlands issues including pond drainage that crosses under the proposed second access road. (Tr. p. 17). The Blackrock proposal includes a locked crash gate and no curb cut at the second access so that only emergency vehicles would traverse it. (Tr. pp. 22-23).
Next, Petitioner called Kirk Andrews (hereinafter referred to as Andrews), an experienced professional land surveyor whom the Board recognized as an expert. (Tr. pp. 24-25). Blackrock contains three (3) different parcels within the total of fifty-three (53) acres; the northern boundary line is open space, a part of the abutting Black Walnut Drive subdivision; on the west is the Blackrock Pond; on the south is a horse farm, 360 feet of frontage, the main entrance, then south of that is the condominium, then just to the south of that is approximately 160 feet of frontage with a twelve to fifteen (12-15) foot right-of-way; the only access to Hill Street is from the main entrance to Blackrock. (Tr. p. 26). Petitioner does not own fifty (50) feet of frontage for a second fully developed access road thus would have to infringe upon wetlands. (Tr. p. 67).
Petitioner next called Scott Rabideau (hereinafter referred to as Rabideau, a wetlands biologist licensed since 1986 who has been qualified as an expert before both DEM and Coastal Resource Management Commission for wetlands evaluations, wildlife habitat assessments and recreational assessments and whom the Board accepted as an expert witness. (Tr. pp. 27, 33). Pertaining to the second means of access, Rabideau testified that an applicant for a DEM permit in Petitioner's circumstances would have to demonstrate that by DEM standards the project is not random, unnecessary or undesirable. (Tr. p. 28). The random element is adequately established in this case by showing the purpose of crossing the wetland. The necessity element is based on whether or not practicable alternatives exist. DEM already issued a wetland crossing permit for the main entrance to Blackrock; wetlands bring approximately 200 feet of that road within DEM's jurisdiction and an alteration to the perimeter wetland has already been granted by DEM. (Tr. pp. 29-30). Therefore, because the undeveloped second access provides for emergency vehicle access, DEM would not want freshwater wetlands altered for an unnecessary second fully developed access. (Tr. p. 30). Additionally, Petitioner would not be able to overcome the desirability element which addresses the intrusion resulting from a fully developed second means of access. (Tr. p. 31). The intrusion would require physical disturbance of a biological wetland in excess of a quarter acre, including culverting a stream. (Tr. p. 31). In Rabideau's opinion, Petitioner would be unable to show the required "no impact" to the functional values of the wetland and Petitioner would not even be able to meet the requirements for application to intrude on the wetland area because the proposal already includes an undeveloped access for emergency vehicles. (Tr. p. 32). Rabideau concluded that Petitioner would be unable to satisfy the necessity and desirability elements required by DEM if it sought DEM approval of a fully developed second means of access to its proposed development. (Tr. p. 32).
Next, Petitioner presented David M. D'Amico (hereinafter referred to as D'Amico), an experienced civil engineer project manager with a specialty in traffic, highway and transportation engineering, whom the Board accepted as a traffic engineer. (Tr. pp. 33-35). After analyzing traffic safety and traffic capacity, D'Amico opined that the proposed fully developed access road from Blackrock onto Hill Street is safe and adequate. (Tr. pp. 38-39). D'Amico testified that one access to Blackrock would provide for the correct flow of traffic in and out of the subdivision and proper sight distance would exist. (Tr. p. 42, 45). Further, D'Amico testified that full development of the second access road is not required and would not conform to the required standards. (Tr. p. 42). Sight distance would be absolutely dangerous, because the second access involves a curve in Hill Street and the volume of cars would be an influencing factor. (Tr. p. 43).
Members of the public were then heard by the Board. First, Marie Flaherty Drumm, owner of property abutting the pond, requested access to the pond. (Tr. p. 51). A R Properties owns the yellow house and the pond which are not part of the Blackrock subdivision. (Tr. p. 52). The second member of the public to testify, Denise DeGraide (hereinafter referred to as DeGraide), expressed concern about vehicular traffic on the portion of the proposed undeveloped access road upon which she presently has a deeded right-of-way for access from a horse farm to Hill Street; in good weather, horses frequently travel on that road. (Tr. pp. 57-58, 64). DeGraide also expressed concern about the traffic on Hill Street, the parking on Hill Street during baseball season and drainage causing floods to neighbors' houses if the Petitioner receives approval with only one fully developed access. (Tr. pp. 61-62). Next, Francis Murray expressed concern about the potential traffic volume added to Hill Street from Blackrock, flooding onto Hill Street from the brook and potential cost to the taxpayers of upgrading Hill Street. (Tr. pp. 68-71). Next, Normand Yeargeau, a condominium resident, testified that the yellow house, allegedly rented to a couple with 2 children, actually has 4 adults and 13 children residing in it; at present, four vehicles traverse a portion of the undeveloped proposed second access road. (Tr. p. 72). He testified that the dirt road is approximately 6 feet distance from the condominium building; if the crash gate is broken open, there will be constant traffic. (Tr. pp. 72-73).
Near the close of the hearing, Petitioner emphasized that the proposed density (houses per acreage requirement) of Blackrock met the zoning ordinance. (Tr. p. 75). Board member Nassaney raised the planning rule that a road into a subdivision which is longer than 600 feet cannot be a dead end. (Tr. p. 76). Another Board member raised the safe travel of emergency vehicles on the second or undeveloped access road. (Tr. p. 76).
On November 7, 1994, the Board voted to deny the appeal thereby affirming the Planning Commission's denial of the Petitioner's application. (Decision at 2). In its decision, the Board framed the issue: "[t]hat the proposed subdivision did not have two fully developed means of ingress and egress, to wit: a 50 foot right of way with 30 feet of pavement in accordance with the Subdivision Policies of the Planning Commission." (Id at 1). As evidence, the Board found:
 "1. That the parcel contains 53 acres bordering on the north by the Black Walnut subdivision, on the west by Blackrock pond, on the south by a horse farm and by Hill Street.
 "2. That the parcel in question has approximately 460 feet of frontage divided by a condominium with approximately 300 feet to one side and 160 feet to the other side all on Hill Street.
 "3. That the main means of ingress and egress proposed involves a 50 foot right of way, 30 feet of pavement and 5 feet of sidewalks on either side.
 "4. That a second means of access would be blocked by an emergency break through gate.
 "5. That a single entrance would be adequate for traffic from a safety point of view.
 "6. That a fully developed second means of access is not required and would be dangerous.
 "7. That in order to obtain a fully developed second means of access, DEM approval would need to be sought and most likely would be denied." (Id. at 1-2).
Despite these factual findings, all of which are supported by evidence in the record, the Board denied Petitioners' appeal.
The instant appeal followed.
STANDARD OF REVIEW
Superior Court review of a subdivision board of appeal decision is controlled by G.L. 1956 (1991 Reenactment) § 45-23-71
which, in pertinent part, provides:
 "(B) The review shall be conducted by the superior court without a jury. The court shall consider the record of the hearing before the planning board and, if it shall appear to the court that additional evidence is necessary for the proper disposition of the matter, it may allow any party to such appeal to present such evidence in open court, which evidence, along with the report, shall constitute the record upon which the determination of the court shall be made.
 "(C) The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 "(1) In violation of constitutional, statutory, ordinance or planning board regulation provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board of review, a justice of the Superior Court may not substitute his or her judgment for that of the board if he or she conscientiously finds that the board's decision was supported by substantial evidence.Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). When determining an appeal from a zoning board of review's decision, the court is authorized by statute to admit evidence when it appears to the court that the evidence is necessary for a proper disposition of the matter. General Laws 1956 (1991 Reenactment) § 45-23-71(B). On review of the Superior Courts' judgment, the Supreme Court determines whether legally competent evidence exists to support the decision of the Superior Court. Rhode Island PublicTelecommunications Authority v. Rhode Island Labor RelationsBoard, 650 A.2d 479, 485 (R.I. 1994).
ADEQUACY OF ACCESS TO BLACKROCK
Petitioner contends that the Board's decision is "directly contrary to the unanimous evidence presented at the hearing" and is "in conflict with the Board's own findings based on that evidence." (Complaint, paragraph 5). An examination of the record establishes that the undisputed evidence before the Board substantiates its evidentiary findings. Based on the evidence before it, the Board expressly found, in part, ". . . [t]hat a single entrance would be adequate for traffic from a safety point of view; . . . [t]hat a fully developed second means of access is not required and would be dangerous . . . ." (Decision at 2). Based on its findings, however, the Board sustained the Planning Commission's denial of Petitioner's subdivision application. The Board justifies said denial, as did the Planning Commission, by relying on a portion of the "Planning Commission's Subdivision Policies" (hereinafter referred to as Policies). Said Policies state, in relevant part, that:
 ". . . these policies are general guides that augment the Subdivision Regulations. These policies set down general rules and regulations governing the processing of Subdivision applications and shall be met by all applicants. . . . The Planning Commission will base its actions on all subdivision plats on the following considerations: . . .
 3. Adherence to desirable standards of site design in such a manner as to provide the following:
 Two means of egress and ingress as appropriate or necessary to provide for adequate, safe and free-flowing circulation of pedestrian and vehicular traffic. . . ."
It is undisputed that the Board relied on the above Policies in reaching its decision. Said Policies do not require two (2) fully developed access roads. Although the Board argues in this appeal that the Blackrock proposal has only one means of access, clearly it has two (2), one (1) fully developed and one (1) less than fully developed. (Decision at 1). The Board expressly found that a single entrance would be adequate from a traffic safety point of view and that a fully developed second access road is not required and would be dangerous. (Decision at 2). To the extent that the Policies require two (2) means of access "as appropriate or necessary . . .," the Blackrock proposal factually satisfies it. Consequently, Petitioner's contention that the Policies are not duly enacted subdivision regulations need not be reached; if necessary to reach said contention, the Court might find Petitioner's analysis persuasive.
Accordingly, the subject decision of the Board is hereby reversed because the Board's decision is clearly erroneous in view of the reliable, probative and substantial evidence of the whole record.
Petitioner shall submit a proposed order which will be settled after notice.
[1] The complaint of Petitioner Blackrock Associates, L.L.C. provides that although both petitioners originally filed this action, thereafter Blackrock Associates, L.L.C. pursues this appeal as successor-in-interest to A R Properties, Inc. (Complaint, paragraph 4).
[2] A fully developed access means approximately a fifty (50) foot right-of-way with thirty (30) feet of pavement, precast curbs on both sides, then concrete sidewalks on both sides. (Tr. p. 2, 13). See Town of Coventry Code, Sec. V, Art 6(10), Town of Coventry Code, Sec. 15-71 et seq.